# IN THE COURT OF APPEALS OF IOWA

No. 18-1843
Filed July 24, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DOUGLAS EARL HUTCHISON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Sioux County, Robert J. Dull, District Associate Judge.

Douglas Hutchison appeals from judgment and sentence entered following the denial of his motion to suppress and a trial on the minutes of testimony. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, (until withdrawal), and Theresa R. Wilson and Brenda J. Gohr (until withdrawal), Assistant Appellate Defenders, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Douglas Hutchison appeals from judgment and sentence entered following the denial of his motion to suppress and a trial on the minutes of testimony, after which the district court found him guilty of operating while intoxicated (OWI), in violation of Iowa Code section 321J.2 (2017). Because the court erred in finding the officers' warrantless entry into the garage permissible under the community-caretaking exception, we reverse the judgment and sentence and remand for further proceedings.

On September 23, 2017, Iowa State Trooper Matthew Ross received a radio report of a reckless driver. The report identified the location and make of the vehicle and the fact that the vehicle had gone into the ditch on two occasions, going into a corn field on the second occasion. The report was being given by a citizen following the vehicle. Trooper Ross located the vehicle parked in a residential driveway. Trooper Ross called for backup, and Sioux County Deputy Sheriff Brad DeKam responded. Both officers approached the vehicle and observed grass and corn stalks stuck on it, but no driver or occupant in the vehicle. The officers knocked on the door to the residence and received no response. They then went around the house and knocked on a side door to the garage. They heard a voice from inside say, "I'm coming." The minutes of testimony indicated Trooper Ross opened the door and Deputy DeKam followed Trooper Ross in and observed Hutchison coming up the stairs from the basement. Trooper Ross testified Deputy DeKam opened the door and Ross followed him in. Based on observations and questions after the entry, Hutchison was charged with OWI.

Hutchison filed a motion to suppress statements and physical evidence, contending the warrantless entry was unlawful. In his motion to suppress, Hutchison noted, "In this case, officers were clearly investigating the possible offense of careless driving, a simple misdemeanor." He asserted the community-caretaking exception is not a justification for the warrantless entry and search of a home in the absence of some form of an objectively reasonable emergency and the "State has not been able to articulate [a] viable ground why this is an emergency."

The district court denied the motion to suppress, concluding the community-caretaking exception to the warrant requirements allowed the officers to enter and question Hutchison. The court concluded:

> It cannot be contested that the information available to the officers fully supported a conclusion that whoever was operating the vehicle was extremely impaired for whatever reasons, be it alcohol or medical issues. Questions regarding the operator's health and immediate safety were founded and relevant. Under the community caretaking function of law enforcement the officers had specific and articulable facts to be reasonably concerned about the operator of the vehicle. Such factors constitute a bona fide community caretaking function and justify the actions of the officers in this case.

A trial on the minutes of testimony followed. The court found Hutchison guilty as charged and entered judgment and sentence. The court ordered Hutchinson to pay restitution without a determination on his ability to pay.

Hutchison appeals.

> "When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." We examine the whole record and "make 'an independent evaluation of the totality of the circumstances.'" "Each case must be evaluated in light of its unique circumstances."

*State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018), *cert. denied*, 139 S. Ct. 608 (2018) (internal citations omitted).

Both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution protect citizens against "unreasonable searches and seizures." "The purpose of this protection is to safeguard the privacy and security of individuals against arbitrary invasion by government officials." *State v. Carlson*, 548 N.W.2d 138, 140 (Iowa 1996). Warrantless searches or seizures are constitutionally prohibited unless an exception to the warrant requirement applies. *Id.* "Evidence obtained by an illegal search is inadmissible unless the state proves by a preponderance of the evidence that a recognized exception to the warrant requirement applies." *Id.*

In *Carlson*, the court observed the emergency-aid exception may allow the warrantless entry into a home. *Id.* at 142. The test is whether a reasonable person would have thought an emergency existed. *Id.* at 143. Another exception to the warrant requirement is the community-caretaking exception recognized by the United States Supreme Court in *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973) ("Local police officers . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute."). Our supreme court explained the interrelated doctrines:

> Under the emergency aid doctrine, the officer has an immediate, reasonable belief that a serious, dangerous event is occurring. . . . [I]n contrast, the officer in a public servant situation [also referred to as community caretaking] might or might not believe that there is a difficulty requiring his general assistance. For example, an officer assists a motorist with a flat tire under the public servant doctrine, but an officer providing first aid to a person slumped over the steering

wheel with a bleeding gash on his head acts pursuant to the emergency aid doctrine.

*State v. Crawford*, 659 N.W.2d 537, 541-42 (Iowa 2003) (citation omitted).

We apply a three-step inquiry to determine whether an officer's actions fall under the community-caretaking exception: "(1) was there a seizure within the meaning of the Fourth Amendment?; (2) if so, was the police conduct bona fide community caretaker activity?; and (3) if so, did the public need and interest outweigh the intrusion upon the privacy of the citizen?" *Coffman*, 914 N.W.2d at 245 (quoting *Crawford*, 659 N.W.2d at 543). Under the Iowa Constitution, the State must prove "*both* that the objective facts satisfy the standards for community caretaking *and* that the officer subjectively intended to engage in community caretaking." *Id.* at 257.

As an initial matter, the State on appeal asserts the entry into the garage was consensual. There is nothing in the record to support the claim. Both officer testified they opened the door to the residence after hearing a voice from within the residence stated, "I'm coming." This is not an invitation to enter.

The State's brief asserts the officers were "acting as public servants in efforts to check on the reckless driver's health and safety." This statement itself and its reference to a "reckless driver" acknowledges the officers' actions were not "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441.

A de novo review of the minutes of testimony and the testimony offered by the officers at the hearing on the motion to suppress establishes the officers were engaged in law enforcement activity and not a community-caretaking activity. *Compare Coffman*, 914 N.W.2d at 253–54 (finding officers stopping to check on a

vehicle on the side of the road at 1:00 a.m. in a rural area of Iowa were involved in community caretaking), *with State v. Smith*, 919 N.W.2d 1, 4–5 (Iowa 2018) (finding that officers stopping a van in search of the driver of a vehicle in a ditch was not community caretaking but rather "was investigatory in nature"). Trooper Ross was asked why he was knocking at the door of the residence. He responded, "Trying to see if we could figure out who was driving the vehicle that was in the driveway." *See Smith*, 919 N.W.2d at 5 ("The van stop would have comprised an effort to locate Cody, not to potentially help him, but to investigate how he drove the car into the ditch."); *see also State* v. *Werner*, 919 N.W.2d 375, 379 (Iowa 2018) (rejecting applicability of community-caretaking exception where the officer acknowledged he was "patrolling," i.e., engaged in law enforcement activity). Deputy DeKam was asked if he had concerns when he arrived at the residence. He responded: "Since—since he lived near the—near the location of the damaged corn, I suspected that he would want to make contact with an owner, had he caused damage to a neighbor's property." These statements are not indicative of objective attempts to help but to investigate who drove the car into the corn field causing damage to crops. We conclude the district court erred in applying the community-caretaking exception to deny the motion to suppress.

We reverse Hutchison's conviction, and remand for further proceedings consistent with this opinion.[1]

**REVERSED AND REMANDED.**

---

[1] Hutchison also objects to the sentence imposed. Because we reverse the conviction, we do not address this issue.